UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTON A. EWING,<br><br>                       Plaintiff,<br>v.<br>CSOLAR, a California corporation,<br><br>                       Defendant. | Case No.: 22-cv-0720-WQH-JLB<br><br>**ORDER** |

HAYES, Judge:

    The matter before the Court is the Motion for Default Judgment filed by Plaintiff Anton A. Ewing. (ECF No. 5).

**I.    PROCEDURAL BACKGROUND**

    On May 19, 2022, Plaintiff filed a Complaint against Defendant CSOLAR, arising from Defendant's alleged unlawful telephone solicitation practices. (ECF No. 1). On May 31, 2022, Plaintiff filed proof of service as to Defendant. (ECF No. 3). On June 21, 2022, Plaintiff filed a Request for Entry of Clerk Default as to Defendant (ECF No. 4), and the Clerk of the Court entered default (ECF No. 6). On June 27, 2022, Plaintiff filed a Motion for Default Judgment. (ECF No. 5).

///

///

## II. ALLEGATIONS IN THE COMPLAINT

Defendant is a California corporation and "solar panel installation broker" that "conducts telemarketing campaigns" to "sell its services to consumers throughout southern California." (ECF No. 1 ¶¶ 33, 35). Plaintiff resides in San Diego, California and is "the owner and sole user of … cellular phone number 619-719-9640." (*Id.* ¶ 1).

Plaintiff "registered his cell phone number on the [national do-not-call registry] on February 16, 2012, for the express purpose that he would not receive unsolicited calls or text messages." (*Id.* ¶ 51). Plaintiff's cellular phone number "is not associated with a business and is used for personal, private residential use only." (*Id.* ¶ 52).

Defendant "called or texted Plaintiff" from various numbers eleven times between April 27, 2022, and May 18, 2022, "to sell its solar panel installation services." (*Id.* ¶¶ 47-48). On "each and every call," Plaintiff "heard a very clear 'bubble popping' type sound followed by a rather long pause before the artificial-voice prerecorded message began to play." (*Id.* ¶ 38). Plaintiff "was required to hit '1' to be transferred to a live operator." (*Id.*). "Replying 'STOP' did not work," and Defendant continued "calling and texting" despite Plaintiff "making very clear" that he did not want to be called. (*Id.* ¶ 48).

"The distinct bubble-popping sound and the long silent pause were … clear indication[s] that an [Automatic Telephone Dialing System ('ATDS')] robo-dialer was used by Defendant for the calls." (*Id.* ¶ 40). "The text messages were generic which indicates an ATDS was used by Defendant" to send "[a]ll of the text messages." (*Id.* ¶ 41-42). An employee of Defendant "stated that [Defendant] uses Nation Energy Services … to obtain [its] telemarketing calling list to upload into [an] autodialer software" and "admitted that they were using an "auto dialing computer to make the calls and send out the text messages in order to get California residents to buy their solar programs." (*Id.* ¶¶ 44, 50).

Plaintiff and Defendant "do not have a pre-existing business relationship." (*Id.* ¶ 39). Plaintiff "never provided his phone number or his consent to Defendant [ ] to receive any solicitation from them or on their behalf." (*Id.* ¶ 58). Defendant has caused Plaintiff harm

in the form of "aggravation, nuisance, and invasions of privacy, … the wear and tear on [Plaintiff's] phone, interference with the use of [Plaintiff's] phone, consumption of battery life, loss of value for monies [Plaintiff] paid to his AT&T carrier for the receipt of such messages, and the diminished use, enjoyment, value, and utility of [Plaintiff's] telephone plan." (*Id.* ¶ 45).

Plaintiff brings the following claims against Defendant: (1) negligent and willful or knowing violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227; (2) violations of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code Sections 630 *et seq.*; and (3) violations of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code Sections 1750 *et seq*. The Complaint requests damages, declaratory and injunctive relief, and costs.

## III.   DEFAULT JUDGMENT

Rule 55(a) of the Federal Rules of Civil Procedure requires that the Clerk of the Court enter default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). Rule 55(b)(2) provides that the court may grant default judgment after default has been entered. *See* Fed. R. Civ. P. 55(b)(2). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). "Factors which may be considered by courts" in determining whether default judgment should be granted include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citing 6 MOORE'S FEDERAL PRACTICE ¶ 55-05[2], at 55-24 to 55-26).

Plaintiff has demonstrated that Defendant was served with the summons and Complaint and the Clerk of the Court has entered default against Defendant. Default judgment is likely Plaintiff's only recourse for recovery and the possibility of a dispute concerning material facts or that Defendant's default was due to excusable neglect is low. The first, fifth, and sixth *Eitel* factors weigh in favor of default judgment. Further, although there is a "strong policy ... favoring decision on the merits," *Eitel*, 782 F.2d at 1472, Defendant's failure to answer the Complaint makes a decision on the merits impractical, if not impossible.

The second and third *Eitel* factors favor default judgment where the plaintiff "state[s] a claim on which the [plaintiff] may recover." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). In the Complaint, Plaintiff brings claims against Defendant for violations of two subsections of the TCPA, as well as state law claims under the CIPA and the CLRA.[1]

**A. TCPA § 227(b)**

The TCPA makes it "unlawful for any person ... to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any [ATDS] or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). To bring an action under § 227(b)(1)(A)(iii), a plaintiff must show: "(1) the defendant called a cellular telephone number; (2) using an [ATDS]; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

---

[1] Plaintiff further requests default judgment for violations of Cal. Bus. & Profs. Code Section 17200. This request is denied because the Complaint does not contain a cause of action for violation of Section 17200. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.")

The Complaint alleges that Plaintiff is "the owner and sole user of … cellular phone number 619-719-9640." (ECF No. 1 ¶ 1). The Complaint alleges that Defendant "called or texted Plaintiff" from various numbers eleven times between April 27, 2022, and May 18, 2022, "to sell its solar panel installation services." (*Id.* ¶¶ 47-48). The Court concludes that the Complaint alleges sufficient facts to show that Defendant called Plaintiff's cellular telephone number eleven times. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("[A] text message is a 'call' within the meaning of the TCPA.").

The Complaint alleges that on "each and every call," Plaintiff "heard a very clear 'bubble popping' type sound followed by a rather long pause before the artificial-voice prerecorded message began to play." (ECF No. 1 ¶ 38). The Complaint alleges that Plaintiff "was required to hit '1' to be transferred to a live operator." (*Id.*). The Complaint alleges that "[t]he text messages were generic which indicates an ATDS was used by Defendant" to send "[a]ll of the text messages." (*Id.* ¶¶ 41-42). The Complaint alleges that an employee of Defendant "stated that [Defendant] uses Nation Energy Services … to obtain [its] telemarketing calling list to upload into [an] autodialer software" and "admitted that they were using an "auto dialing computer to make the calls and send out the text messages in order to get California residents to buy their solar programs." (*Id.* ¶¶ 44, 50). The Court concludes that the Complaint alleges sufficient facts to show that Defendant used an ATDS to place each of the eleven calls received by Plaintiff.

The Complaint alleges that Plaintiff "never provided his phone number or his consent to Defendant [ ] to receive any solicitation from them or on their behalf." (*Id.* ¶ 58). The Complaint alleges that Defendant continued "calling and texting" despite Plaintiff "making very clear" that he did not want to be called. (*Id.* ¶ 48). The Court concludes that the Complaint alleges sufficient facts to show that Plaintiff did not consent to the calls. Plaintiff states a claim for relief under § 227(b)(1)(A)(iii) of the TCPA.

**B. TCPA § 227(c)**

Section 227(c) of the TCPA further instructs the Federal Communications Commission ("FCC") to "initiate a rulemaking proceeding concerning the need to protect

residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Pursuant to this directive, the implementing regulation of the TCPA provides that "[n]o person or entity shall initiate any telephone solicitation to: … [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c). A telephone solicitation is:

> the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message:
>   (i) To any person with that person's prior express invitation or permission;
>   (ii) To any person with whom the caller has an established business relationship; or
>   (iii) By or on behalf of a tax-exempt nonprofit organization.

*Id.* § 64.1200(f)(15). Personal cellular telephones can be considered "residential telephones." *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014, 14039 (2003). The TCPA establishes a private right of action for "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity" in violation of this regulation. 47 U.S.C. § 227(c)(5).

The Complaint alleges that Plaintiff "registered his cell phone number on the [national do-not-call registry] on February 16, 2012, for the express purpose that he would not receive unsolicited calls or text messages." (ECF No. 1 ¶ 51). The Complaint alleges that Plaintiff's cellular phone number "is not associated with a business and is used for personal, private residential use only." (*Id.* ¶ 52). The Complaint alleges Defendant "called or texted Plaintiff" from various numbers eleven times between April 27, 2022, and May 18, 2022, "to sell its solar panel installation services." (*Id.* ¶¶ 47-48). The Complaint alleges that an employee of Defendant "admitted" that they were calling and texting "in order to get California residents to buy [Defendant's] solar programs." (*Id.* ¶¶ 44, 50). The

Complaint alleges that Plaintiff and Defendant "do not have a pre-existing business relationship," and that Plaintiff "never provided his phone number or his consent to Defendant [ ] to receive any solicitation from them or on their behalf." (*Id.* ¶¶ 39, 58). The Court concludes that Plaintiff alleges sufficient facts to show that Defendant initiated eleven telephone solicitations to Plaintiff—a residential telephone subscriber who has registered his telephone number on the national do-not-call registry—in violation of § 227(c)(5) of the TCPA.

### C. CIPA

The CIPA provides a private right of action against any person who, "without the consent of all parties to a communication, intercepts or receives and intentionally records ... a communication transmitted between" a cellular telephone and another cellular telephone, a landline, or a cordless telephone. Cal. Pen. Code § 632.7; *see id.* § 637.2. The Complaint does not allege any facts from which the Court can infer that the alleged calls at issue were recorded. The Complaint does not state a claim for a violation of the CIPA.

### D. CLRA

The CLRA prohibits

> [d]isseminating an unsolicited prerecorded message by telephone without an unrecorded, natural voice first informing the person answering the telephone of the name of the caller or the organization being represented, and either the address or the telephone number of the caller, and without obtaining the consent of that person to listen to the prerecorded message.

Cal. Civ. Code § 1770(a)(22)(A); *see id.* § 1780. The CLRA's prohibition on disseminating unsolicited prerecorded messages only applies to calls "intended to result or that results in the sale or lease of goods or services to any consumer," and excludes certain calls made in the course of an established relationship. *Id.* § 1770(a).

The Complaint alleges that Defendant "called or texted Plaintiff" from various numbers eleven times between April 27, 2022, and May 18, 2022, "to sell its solar panel installation services." (ECF No. 1 ¶¶ 47-48). The Complaint alleges that on "each and every call," Plaintiff "heard a very clear 'bubble popping' type sound followed by a rather long

pause before the artificial-voice prerecorded message began to play." (*Id.* ¶ 38). Plaintiff "was required to hit '1' to be transferred to a live operator." (*Id.*). The Complaint alleges that Plaintiff and Defendant "do not have a pre-existing business relationship," and that Plaintiff "never provided his phone number or his consent to Defendant [ ] to receive any solicitation from them or on their behalf." (*Id.* ¶¶ 39, 58). Defendant has caused Plaintiff harm in the form of "aggravation, nuisance, and invasions of privacy, … the wear and tear on [Plaintiff's] phone, interference with the use of [Plaintiff's] phone, consumption of battery life, loss of value for monies [Plaintiff] paid to his AT&T carrier for the receipt of such messages, and the diminished use, enjoyment, value, and utility of [Plaintiff's] telephone plan." (*Id.* ¶ 45). The Court concludes that Plaintiff states a claim for relief under Section 1770(a)(22)(A) of the CLRA.

Plaintiff states a claim for relief for Defendant's violations of the TCPA and the CLRA. The second and third *Eitel* factors weigh in favor of default judgment. The Court has considered the factors articulated in *Eitel* and concludes that Plaintiff is entitled to default judgment against Defendant on his TCPA and CLRA claims.

## IV.    REMEDIES

Plaintiff requests $1,000 in statutory damages under the TCPA for each of the eleven calls and texts Defendant allegedly made to Plaintiff—$500 for each violation of § 227(b)(1)(A)(iii) and $500 for each violation of § 227(c)(5). Plaintiff requests that the Court find that Defendant's violations of the TCPA were willful or knowing and grant treble damages for a total of $33,000 in statutory damages under the TCPA. Plaintiff requests a permanent injunction to prohibit Defendant from violating the TCPA in the future. Plaintiff further requests $5,000 for each violation of the CIPA and $2,500 for each violation of the CLRA.[2]

---

[2] Plaintiff is not entitled to damages on his CIPA claim because the Complaint fails to state a claim for relief under the CIPA.

|  |  |
|---|---|
| 1 | The Court has determined that the Complaint alleges sufficient facts to show that each of Defendant's eleven calls or texts violated § 227(b)(1)(A)(iii) and § 227(c)(5)—a total of 22 TCPA violations. Courts considering the issue have allowed separate recoveries when the same call results in violations of both § 227(b) and § 227(c). *See, e.g., Stark v. Bridgepoint Benefits, LLC*, 3:19-cv-01740-AJB-AGS, 2021 WL 347695, at *1 (S.D. Cal. Feb. 2, 2021); *Roylance v. ALG Real Estate Servs., Inc.,* No. 5:14-cv-2445-PSG, 2015 WL 1522244, at *10 (N.D. Cal. Mar. 16, 2015); *Charvat v. NMP, LLC*, 656 F.3d 440, 448 (6th Cir. 2011) ("The fact that the statute includes separate provisions for statutory damages in subsections (b) and (c) suggests that a plaintiff could recover under both."). The TCPA provides for $500 in statutory damages for each violation. *See* 47 U.S.C. §§ 227(b)(3)(B), 227(c)(5)(B). Plaintiff is entitled to a total of $11,000 in statutory damages for Defendant's twenty-two violations of the TCPA. |

The Court has determined that the Complaint alleges sufficient facts to show that each of Defendant's eleven calls or texts violated § 227(b)(1)(A)(iii) and § 227(c)(5)—a total of 22 TCPA violations. Courts considering the issue have allowed separate recoveries when the same call results in violations of both § 227(b) and § 227(c). *See, e.g., Stark v. Bridgepoint Benefits, LLC*, 3:19-cv-01740-AJB-AGS, 2021 WL 347695, at *1 (S.D. Cal. Feb. 2, 2021); *Roylance v. ALG Real Estate Servs., Inc.,* No. 5:14-cv-2445-PSG, 2015 WL 1522244, at *10 (N.D. Cal. Mar. 16, 2015); *Charvat v. NMP, LLC*, 656 F.3d 440, 448 (6th Cir. 2011) ("The fact that the statute includes separate provisions for statutory damages in subsections (b) and (c) suggests that a plaintiff could recover under both."). The TCPA provides for $500 in statutory damages for each violation. *See* 47 U.S.C. §§ 227(b)(3)(B), 227(c)(5)(B). Plaintiff is entitled to a total of $11,000 in statutory damages for Defendant's twenty-two violations of the TCPA.

The TCPA further provides that the Court may grant treble damages "in its discretion" if the Court finds that the defendant's violations were "willful[] or knowing[]." 47 U.S.C. §§ 227(b)(3)(C), 227(c)(5)(C). District courts in this circuit have typically exercised their discretion to award treble damages in cases where the defendant had a prior judgment against it for violating the TCPA or where statutory damages were trivial. *See Ewing v. Senior Life Planning, LLC*, No. 19-cv-1005-BAS-LL, 2019 WL 4573703, at *7 (S.D. Cal. Sept. 18, 2019). In this case there is no allegation that Defendant had a prior judgment against it for violating the TCPA and an award of $11,000 in statutory damages is sufficient to deter Defendant from violating the TCPA in the future. The Court declines to award treble damages.

The TCPA provides that a Court may enjoin a defendant from violating §§ 227(b) and 227(c). *See* 47 U.S.C. §§ 227(b)(3)(A), 227(c)(5)(A). However, Plaintiff has not demonstrated irreparable injury or that damages are inadequate. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) ("A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of

hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."); *see also PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (stating that a plaintiff that obtains default judgment "is not automatically entitled to an injunction"). Plaintiff's request for an injunction is denied.

Plaintiff requests $2,500 under the CLRA for each of the eleven calls and texts alleged in the Complaint. However, the CLRA applies to voice calls, not text messages, *see* Cal. Civ. Code § 1770(a)(22)(A), and the Complaint does not allege how many calls were made to Plaintiff. Further, Plaintiff has not provided any evidence of the amount of damages as a result of Defendant's violation of the CLRA. *See* Cal. Civ. Code § 1780(a)(1) (providing for the recovery of actual damages, not statutory damages); *see also TeleVideo Sys.*, 826 F.2d at 917-18 ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.") (quoting *Geddes*, 559 F.2d at 560). Plaintiff has not demonstrated that he is entitled to damages on his CLRA claim.

## V. CONCLUSION

IT IS HEREBY ORDERED that the Motion for Default Judgment filed by Plaintiff Anton A. Ewing against Defendant CSOLAR (ECF No. 5) is granted in part and denied in part. The motion is granted as to Plaintiff's claims for violations of §§ 227(b)(1)(A) and (c)(5) of the TCPA and Section 1770(a)(22)(A) of the CLRA, and is otherwise denied. Defendant is liable in the amount of $11,000.

IT IS FURTHER ORDERED that no later than fourteen (14) days from the date of this Order, Plaintiff shall e-mail a proposed judgment in accordance with the ruling in this Order to efile_hayes@casd.uscourts.gov.

Dated: September 22, 2022

Hon. William Q. Hayes
United States District Court